UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DIETMAR ROSE, KUPRIAN FROLOV a/k/a
SKIP FROLOV, HAROLD RODENBEIKER,
TOM SCHNEIDER, DAVID PETERSON,
LEWIS NORMAN FERRIER, GARY FRITZ,
MERLE GILBERTSON, JAMES KELLER,
DORAYN KEMMITZ, PAULA KOCHON,
RALPH MARTIN and JOHN VIGLUCCI, JR.,

                  Plaintiffs,

     -against-

RAHFCO MANAGEMENT GROUP, LLC, et al.,

                  Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

13 Civ. 5804 (VB) (PED)

**TO THE HONORABLE VINCENT BRICCETTI, United States District Judge:**

## I.  INTRODUCTION

    Plaintiffs, the alleged victims of a Ponzi scheme, assert claims pursuant to federal

securities laws and New York law.  Plaintiffs allege that defendants, from at least November

2004 through May 2011, engaged in a large-scale scheme involving the fraudulent offer and sale

of securities in multiple private hedge funds, including RAHFCO Funds LP, RAHFCO Select

LP, RAHFCO Growth Fund LP and RAHFCO Income Fund LP ("the RAHFCO investment

vehicles").  Defendant RAHFCO Management Group, LLC ("RAHFCO") was the general

partner of the RAHFCO investment vehicles and, as such, managed the funds and had

discretionary authority to invest the funds' assets.  Defendant Randal Kent Hansen was

RAHFCO's founder, principal member and president.  On January 22, 2014 (approximately five

months after the instant case was commenced), at the conclusion of a jury trial in the District of

South Dakota, Hansen was convicted of conspiracy, mail fraud and wire fraud. He was sentenced to 108 months' imprisonment and ordered to pay more than $17 million in restitution. See United States v. Hansen, 4:13-cr-40053-KES-1 (D.S.D.), Dkt. #77 (Amended Judgment).

On March 9, 2015, upon RAHFCO's consent, plaintiffs were granted judgment against RAHFCO on the issue of liability; the issue of damages against RAHFCO was deferred until the close of discovery. Dkt. #89. On September 21, 2015, Your Honor referred the matter to me for an inquest on damages as to RAHFCO only. Dkt. #97.[1] Having completed the inquest, for the reasons set forth below, I respectfully recommend that the Court enter judgment against RAHFCO—in favor of the plaintiffs specified below and in the amounts specified below— in the total amount of $5,408,774.86.

## II. THE INQUEST

On September 25, 2015, I issued a Scheduling Order directing plaintiffs to file Proposed Findings of Fact and Conclusions of Law by October 31, 2015. Dkt. #98. The Order stated that plaintiffs' inquest submissions must specify the exact dollar amounts of damages being sought, and should demonstrate how each plaintiff arrived at their proposed damages figure (supported by affidavits and/or documentary evidence). Id. RAHFCO was directed to file its response, if any, by November 30, 2015. Id. On October 29, 2015, by Memo Endorsed Order, I granted plaintiffs' application to extend their time to file inquest submissions to December 1, 2015. Dkt. #100.

---

[1] This action is related to another case brought by different plaintiffs alleging similar claims against many of the same defendants, including Hansen and RAHFCO. See Krasner v. Rahfco Funds LP, 11 Civ. 4092 (VB)(PED)(S.D.N.Y.). The *Krasner* plaintiffs were also granted judgment against RAHFCO on the issue of liability (upon RAHFCO's consent) and that matter has also been referred to me for an inquest on damages. I address the *Krasner* plaintiffs' inquest submissions in a separate, contemporaneous Report and Recommendation.

On December 1, 2015, plaintiffs filed their inquest submission. Dkt. #101.[2] Although their submission set forth the exact amount of damages sought by each plaintiff, those figures were not supported by affidavits. Instead, each plaintiff sought damages in an amount equal to either (1) the criminal restitution judgment entered against Hansen in favor of the particular plaintiff or (2) prospective, contingent Consent Judgments agreed to by Hansen in conjunction with his bankruptcy proceeding. Id. at 1-5.[3] According to plaintiffs:

> In Hansen's Bankruptcy case and criminal case, Hansen was found liable in the amounts set forth within Bankruptcy Order dated November 20, 2015 and Criminal Restitution Judgment dated June 10, 2014. The Bankruptcy Order and Criminal Restitution Judgment are enforceable against Hansen in the instant actions. Given Hansen is an employee, officer, agent, and an owner of the company-defendants, the company defendant is therefore vicariously liable for the listed amounts.

Id. at 5-6.

On April 22, 2016, for the purpose of clarifying plaintiffs' proof of damages as to RAHFCO, I issued an Order scheduling an inquest hearing on the issue of damages for May 18, 2016. Dkt. #103. On May 6, 2016, by Memo Endorsed Order, I granted plaintiffs' request for an adjournment and rescheduled the hearing for June 8, 2016. Dkt. #105.

---

[2] RAHFCO did not file an opposition.

[3] Hansen filed for Chapter 11 bankruptcy in May 2014. Three of the plaintiffs here (Dietmar Rose, Paula Kochon and John Viglucci, Jr.) filed adversary proceedings in the bankruptcy action. On November 20, 2015, the United States Bankruptcy Court for the District of South Dakota entered the following Order in each of their adversarial cases:

> IT IS HEREBY ORDERED this matter is again held in abeyance pending a final resolution of all Debtor-Defendant's remedies regarding the criminal action and the parallel SEC action against him, with the understanding if Debtor-Defendant fails to prevail in those actions, Debtor-Defendant *consents to the entry of a nondischargeable judgment against him in the amount set forth in Plaintiff's complaint.*

See Dkt. #101-5, at 2; #101-6, at 2; #101-7, at 2 (emphasis added).

On June 7, 2016, plaintiffs filed a Supplemental Memorandum of Law in which they elaborated upon their theory that "RAHFCO is liable as a matter of law for [Hansen's] misconduct based upon the theory of vicarious liability and respondeat superior." Dkt. #106, at 6. Plaintiffs' counsel appeared at the hearing on June 8, 2016; RAHFCO did not appear. During the hearing, plaintiffs' counsel affirmed that Hansen's criminal appeals have been exhausted but the contingent bankruptcy judgments have not yet been entered. Plaintiffs' counsel proffered the transcript of Hansen's criminal trial testimony as evidence that he and RAHFCO were essentially one and the same, and that RAHFCO served as the conduit through which Hansen effectuated his fraudulent scheme. Thus, plaintiffs argued, Hansen and RAHFCO benefitted equally from Hansen's fraudulent conduct. Accordingly, despite plaintiffs' misplaced focus on RAHFCO's *liability* rather than proof of damages attributable to RAHFCO, I deduced that plaintiffs were attempting to establish the amounts they were fraudulently induced to invest in RAHFCO by cross-referencing the criminal monetary penalties assessed against Hansen and/or the prospective, contingent Consent Judgments entered into by Hansen in conjunction with his bankruptcy proceeding.

On June 24, 2016, I issued an Order which stated, in part:

> The criminal restitution penalties imposed against Hansen (in favor of some of the plaintiffs here) are the result of a determination by a federal judge based upon consideration of evidence presented by the prosecution, who had the burden to demonstrate, by a preponderance of the evidence, the amount of the loss sustained by each victim as a result of Hansen's criminal offense(s). See 18 U.S.C. § 3664. In the Court's preliminary view, the criminal restitution judgments constitute sufficient proof of actual losses sustained by some of the plaintiffs in this case.
> . . .
> Whether or not the anticipated [bankruptcy] judgments are entered against Hansen, however, [plaintiffs] may not rely on them to establish their losses in this inquest proceeding. Hansen's contingent consent to such judgments–quite possible given for tactical reasons–does not establish these [p]laintiffs' losses in

any reliable way.  Moreover, the underlying bankruptcy complaints, which are not under oath, represent nothing more than allegations leveled by plaintiffs' attorney, and there is no indication that the attorney has any personal knowledge of the facts.

　　　　Accordingly, the Court will allow the Bankruptcy Plaintiffs [the plaintiffs who filed adversary proceedings related to Hansen's Chapter 11 bankruptcy action] ten (10) days from the date of this Order to submit affidavits and/or other documentary evidence establishing the amount of their actual losses due to Rahfco's conduct.  Defendant may submit an opposition (limited to this supplemental evidence) within ten (10) days thereafter.

Dkt. #107.

On June 28, 2016, by Memo Endorsed Order, I granted plaintiffs' request to extend their time to file the affidavits to July 27, 2016.  Dkt. #109.  By letter dated July 27, 2016 (Dkt. #110), plaintiffs requested a second extension of time; on July 28, 2016, by Memo Endorsed Order (Dkt. #111), I extended plaintiffs' time to file the affidavits to August 25, 2016.  On August 25, 2016, plaintiffs–except for James Keller–filed "Affidavits of Loss."  Dkt. #112 (cover letter); #112-2 (Rose); #112-3 (Fritz); #112-4 (Ferrier); #112-6 (Martin); #112-7 (Schneider); #112-8 (Peterson); #112-9 (Kemmitz); #112-10 (Rodenbeiker); #112-11 (Viglucci); #112-12 (Gilbertson); #112-13 (Kochon); #112-15 (Frolov).[4]

### III. DISCUSSION

A.  Measure of Damages

Because RAHFCO has conceded liability, plaintiffs are entitled to damages on their claims against RAHFCO for securities fraud, conversion, unjust enrichment, breach of fiduciary duty and negligence.  Plaintiffs seek the same recovery under each of these causes of action:

---

[4] Counsel's cover letter refers to sixteen (16) attached (and filed) affidavits, including one purportedly from James Keller.  Dkt. #112.  However, only fifteen affidavits were filed: twelve from the plaintiffs (other than Keller) in this action; three from the plaintiffs in the related case (Dkt. #112-1; #112-5; #112-14).  See Krasner v. Rahfco Funds LP, 11 Civ. 4092, Dkt. #309.

return of the monies that they were fraudulently induced to invest in the RAHFCO investment vehicles.[5]  "A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."  Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1995).

Securities fraud damages are typically calculated based upon actual out-of-pocket losses, pursuant to which "a defrauded buyer of securities is entitled to recover only the excess of what he paid over the value of what he got."  Acticon AG v. China N. E. Petroleum Holdings Ltd., 692 F.3d 34, 38 (2d Cir. 2012) (quoting Levine v. Seilon, 439 F.2d 328, 334 (2d Cir.1971)).  "The purpose of the out-of-pocket measure of relief is to restore the plaintiff to the position he was in before the fraud."  CAMOFI Master LDC v. Riptide Worldwide, Inc., No. 10 Civ. 4020, 2012 WL 6766767, at *13 (S.D.N.Y. Dec. 17, 2012).  Thus, the issue in this inquest proceeding is whether plaintiffs have provided a sufficient basis for the court to reasonably ascertain their out-of-pocket losses.

B.  Plaintiffs' Proof of Damages

   1.  Affidavits

In response to the court's June 24, 2016 Order (Dkt. #107), each plaintiff (except for James Keller) submitted a sworn affidavit which purportedly substantiates the amount of their actual losses due to RAHFCO's conduct.  Each affidavit contained only the following averments: (1) the affirming plaintiff invested in RAHFCO through Hansen; (2) Hansen assured them that their investment was secure because most of it would be in government securities; and

---

[5]  Plaintiffs' inquest submissions do not address their claims under New York law for an accounting and imposition of a constructive trust.  Accordingly, it appears plaintiffs have abandoned their claims for equitable relief.

(3) they were "damaged" in a particular amount (set forth in each affidavit). Dkt. #112-2 (Rose); #112-3 (Fritz); #112-4 (Ferrier); #112-6 (Martin); #112-7 (Schneider); #112-8 (Peterson); #112-9 (Kemmitz); #112-10 (Rodenbeiker); #112-11 (Viglucci, Jr.); #112-12 (Gilbertson); #112-13 (Kochon); #112-15 (Frolov). Notably, the affidavits are devoid of specific factual recitations regarding the dates, amounts and form of plaintiffs' payments to the Rahfco investment vehicles. Moreover, plaintiffs' affidavits do not specify the basis or measure of damages sought; although each plaintiff avers that they were "damaged" in a particular amount, these averments provide no basis for the court to infer–without speculation–that the claimed amount equates to out-of-pocket losses (or that it does not include, for instance, damages sought for emotional harm). Plaintiffs have not provided copies of checks or proof of transfers of money from their personal accounts to the Rahfco investment vehicles. However, attached to each affidavit (as "Exhibit A") is either (or both): (1) a copy of the "Proof of Claim" submitted by that plaintiff in Hansen's bankruptcy action; and/or (2) a copy of the Amended Judgment in Hansen's criminal case, reflecting restitution payments to certain of the plaintiffs in the instant case. Id. Absent these attachments, the affidavits amount to conclusory, unsubstantiated assertions regarding the amount of "damages" claimed by each plaintiff. In other words, the affidavits do not provide a basis for the court to reasonably ascertain plaintiffs' out-of-pocket losses, except (perhaps) to the extent that they incorporate the proofs of claim filed by each plaintiff in Hansen's bankruptcy action and/or the criminal restitution judgments entered against Hansen in favor of a particular plaintiff.

*2. Bankruptcy Proofs of Claim*

Attached to the affidavits of plaintiffs Rose, Ferrier, Martin, Schneider, Peterson, Kemmitz, Rodenbeiker, Viglucci, Jr., Gilbertson, Kochon and Frolov are copies of the Proof of Claim filed by each of them (individually) in Hansen's Chapter 11 bankruptcy proceeding. Dkt.

-7-

#112-2, at 4-6 (Rose); #112-4, at 4-6 (Ferrier); #112-6, at 4-6 (Martin); #112-7, at 4-6
(Schneider); #112-8, at 4-6 (Peterson); #112-9, at 4-6 (Kemmitz); #112-10, at 4-6
(Rodenbeiker); #112-11, at 4-6 (Viglucci, Jr.); #112-12, at 4-6 (Gilbertson); #112-13, at 4-6
(Kochon); #112-15, at 4-6 (Frolov).[6] Each Proof of Claim consists of a simple, standardized
form, signed by plaintiff's counsel in the instant action, setting forth an amount claimed by the
particular plaintiff (as a creditor of Hansen's) and the basis for that amount. Id. Plaintiffs Rose,
Ferrier, Martin, Schneider, Peterson, Kemmitz, Rodenbeiker, Gilbertson and Frolov listed the
basis of the claim as "Amended judgment in Criminal Case (restitution) and Claim in pending
civil action (Docket No. 7:13-CV-05804)." Dkt. #112-2, at 4 (Rose); #112-4, at 4 (Ferrier);
#112-6, at 4 (Martin); #112-7, at 4 (Schneider); #112-8, at 4 (Peterson); #112-9, at 4 (Kemmitz);
#112-10, at 4 (Rodenbeiker); #112-12, at 4 (Gilbertson); #112-15, at 4 (Frolov).  Plaintiffs
Kochon and Viglucci, Jr. were not awarded restitution in Hansen's criminal action. Dkt. #101-5,
at 3 (Kochon); #101-7, at 3 (Viglucci, Jr.).  Accordingly, Kochon and Viglucci, Jr. referred only
to the claims pending in the instant action as the basis for their creditor claims. Dkt. #112-11, at
4 (Viglucci, Jr.); #112-13, at 4 (Kochon).

Clearly, the bankruptcy proofs of claim do not provide independent proof of the amount
of plaintiffs' out-of-pocket losses.  They merely incorporate the criminal restitution awards
and/or refer (circuitously) to the claims pending in the instant action.  Thus, plaintiffs may not
rely on the bankruptcy proofs of claim to establish their losses in this inquest proceeding.[7]

---

[6]  Plaintiff Rose's Proof of Claim was filed on behalf of Dietmar and Marilyn Rose.  Dkt.
#112-2, at 4.  Marilyn Rose is not a plaintiff in the instant action.

[7]  Additionally, I adhere to my previous determination that the prospective, contingent
Consent Judgments obtained by plaintiffs Rose, Kuchon and Viglucci, Jr. (as a result of their
adversarial actions in Hansen's bankruptcy proceeding) do not constitute sufficient proof of

Plaintiffs Kochon and Viglucci, Jr. proffer no other evidence to substantiate the amount of their actual out-of-pocket losses, despite the fact that the court provided ample notice and opportunity to do so. Accordingly, I conclude, and respectfully recommend, that Your Honor deny the applications of plaintiffs Kochon and Viglucci, Jr. for an award of damages.

  3.  *Criminal Restitution Awards*

In conjunction with Hansen's criminal conviction and sentence, he was ordered to pay more than $17 million in restitution pursuant to § 3664 of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A-3664. See Dkt. #101-1 (Amended Judgment in a Criminal Case). The restitution order included payments to plaintiffs Rose, Fritz, Ferrier, Martin, Schneider, Peterson, Kemmitz, Rodenbeiker, Gilbertson, Frolov and Keller, in the following amounts:

|  |  |
|---|---|
| L. Norman Ferrier | $835,564.00 |
| Gary Fritz | $187,905.00 |
| Kuprian Frolov | $520,879.86 |
| Merle Gilbertson | $127,142.00 |
| James Keller | $477,814.00 |
| Ralph Martin | $382,708.00 |
| Harold Rodenbeiker | $346,693.00 |
| Dietmar Rose[8] | $1,496,811.00 |
| Thomas Schneider | $283,338.00 |

those plaintiffs' actual losses. See Dkt. #107.

  [8] Dietmar Rose's wife, Marilyn Rose, was also awarded restitution in the amount of $287,500.00. Dkt. #112-2, at 1, 13. Marilyn Rose is not a plaintiff in the instant action.

David Peterson    $499,920.00

Dorayn Kemmitz[9]    $250,000.00

Id., at 7-9.

Section 3664 of the MVRA sets forth the procedure for issuance of orders of restitution. 18 U.S.C. § 3664. "For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order." Id. § 3664(a). "Because the purpose of restitution is essentially compensatory, and because the MVRA itself limits restitution to 'the full amount of each victim's loss,' 18 U.S.C. § 3664(f)(1)(A), a restitution order must be tied to the victim's actual, provable, loss." United States v. Zangari, 677 F.3d 86, 91 (2d Cir. 2012) (internal quotation marks and citations omitted). "The Government bears the burden of proving a victim's actual loss by a preponderance of the evidence." Id. at 92 (citing 18 U.S.C. § 3664(e)).

In sum, the criminal restitution orders reflect a reasoned determination by a federal court of the full amount of each victim's actual loss that was proven by a preponderance of the evidence. Thus, the criminal restitution judgments in favor of plaintiffs Rose, Fritz, Ferrier, Martin, Schneider, Peterson, Kemmitz, Rodenbeiker, Gilbertson, Frolov and Keller constitute a reasonable measure of the amount of their actual, out-of-pocket losses and, accordingly, provide sufficient proof of the amount of damages to which those plaintiffs are entitled in this inquest proceeding.

---

[9] The Amended Judgment lists the name as "Dorayn Kemnitz, Wayzata, MN." Dkt. #101-1, at 9. I assume this is a typographical error: plaintiff Kemmitz indeed resides in Hennepin County, Wayzata, Minnesota. Dkt. #112-9, at 18.

## IV.  CONCLUSION

For the foregoing reasons, I respectfully recommend that damages be awarded against defendant RAHFCO in the total amount of **$5,408,774.86**, to be distributed among plaintiffs Rose, Fritz, Ferrier, Martin, Schneider, Peterson, Kemmitz, Rodenbeiker, Gilbertson, Frolov and Keller as follows:

1. $1,496,811.00 – Dietmar Rose

2. $187,905.00 – Gary Fritz

3. $835,564.00 – L. Norman Ferrier

4. $382,708.00 – Ralph Martin

5. $283,338.00 – Thomas Schneider

6. $499,920.00 – David Peterson

7. $250,000.00 – Dorayn Kemmitz

8. $346,693.00 – Harold Rodenbeiker

9. $127,142.00 – Merle Gilbertson

10. $520,879.86 – Kuprian Frolov

11. $477,814.00 – James Keller

I recommend that Your Honor deny the applications of plaintiffs Kochon and Viglucci, Jr. for an award of damages.

Dated:   December 20, 2016
        White Plains, New York

Respectfully Submitted,

PAUL E. DAVISON, U.S.M.J.

-11-

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).

Such objections, if any, along with any responses to the objections, shall be filed with the Clerk

of the Court with extra copies delivered to the chambers of the Honorable Vincent Briccetti, at

the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300

Quarropas Street, White Plains, New York 10601 and to the chambers of the undersigned at the

same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.